(6 App. Div. 62.)

REYNOLDS v. BANK OF MT. VERNON et al.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. CORPORATIONS—STOCK—RESTRICTING TRANSFER.
    The unauthorized act of the directors of a bank in inserting in the certificates of stock a clause that it shall not be transferred without the consent of the directors, by any stockholder who shall be indebted to the bank, is ratified by a stockholder who, at various times during several years, purchased stock, and received such certificates without objection.

2. SAME—RIGHT OF STOCKHOLDERS TO SUE.
    Such restriction is not injurious to the corporation, and therefore a stockholder cannot sue on behalf of the other stockholders to compel the bank to eliminate such clause from the certificates.
3. BANKS AND BANKING—ACCUMULATION OF SURPLUS.
    A bank has a right to accumulate a surplus before declaring dividends on its stock.

Appeal from special term, Westchester county.

Action by James L. Reynolds against the Bank of Mt. Vernon, N. Y., and Gouverneur Rogers, to obtain several forms of equitable relief, as follows: (1) For a mandatory injunction compelling defendants to omit from the certificates of capital stock a clause which made the stock unmerchantable; (2) for a mandatory injunction to defendants to declare and pay a dividend or dividends; (3) to restrain defendants from loaning the moneys of the bank to the president in unlawful amounts; (4) for an inspection by the stockholders of all the books and papers of the bank, and that defendants be enjoined to make true reports and statements of the financial condition of the bank and the value of its stock; and (5) for an accounting by defendant Rogers of the loans by the bank to him. The complaint was dismissed at the close of plaintiff's case, and plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Ralph E. Prime, for appellant.
Isaac N. Mills, for respondents.

CULLEN, J. The plaintiff is a stockholder of the defendant the Bank of Mt. Vernon, and the defendant Gouverneur Rogers is the president of that corporation. The complaint alleges that the defendant Rogers, with certain associates, who hold a majority of the stock of the bank, have for years controlled its management and conduct. Such conduct and management the complaint alleges to have been illegal and fraudulent in many respects, particularly stated. The action is brought by the plaintiff, for himself and all other stockholders, to obtain redress for these grievances. It will be more convenient to recite the details of these grievances as we proceed to discuss the questions of fact and the law bearing on them.

The bank was organized in June, 1885. The certificates of stock issued to the stockholders at the time of the original organization bear on their face this clause:

"No transfer of the stock of this association shall be made without the consent of the board of directors by any stockholder who shall be liable to the association either as principal debtor or otherwise."

No provision to this effect exists in the articles of association of the bank, nor has there been any by-law passed authorizing this restriction. It appears that, at the first meeting of the directors of the bank, some member of that body suggested that this clause would give additional security to the bank. No formal action was taken on this suggestion. A resolution was passed

that the president (the defendant Rogers) procure the necessary stationery for the bank. He procured blank certificates of stock containing the restriction. Certificates were issued in this form to all the stockholders, and the form was still maintained at the time of the commencement of this action.

. The first complaint of the plaintiff relates to this subject. He complains that this clause, restricting transfers, affects the value of his stock, as it impairs its negotiability, and especially its use as a collateral in obtaining loans. The first prayer for relief is that the defendants may be restrained from issuing any certificates of stock containing this restrictive clause, and that they be enjoined to call in the outstanding certificates, and eliminate therefrom such clause. It may be conceded that, as the articles of association contain no provision authorizing this restriction on the transfers of stock, the directors of the bank were without authority, either with or without a by-law, to establish it. Driscoll v. Manufacturing Co., 59 N. Y. 96. But, though originally unauthorized, the stockholders might, by lapse of time and course of dealing, acquiesce in and ratify this restriction. Kent v. Mining Co., 78 N. Y. 159. A few months after the organization of the bank, the question of abolishing the restriction on the transfer of stock was discussed, and advice sought as to the power of the board in the matter. Beyond this, nothing further seems to have been done. The plaintiff, at times, urged the propriety of removing the restriction; but he acquired, from time to time, further stock, and, on the transfer of such stock, received certificates in the form in use, without objection. The restriction worked no injury to the bank itself, but was advantageous to it. It harmed, if any one, only the stockholders, in so far as it impaired the negotiability of their certificates. There was, therefore, no cause of action in the bank against its stockholders to recall these certificates, and issue others, even assuming that the certificates issued were illegal in form. The grievance, therefore, of the plaintiff, was strictly personal, and, if well founded, had no place in this action. We think that the plaintiff's acquiescence in the issue of this form of certificate estops him from asserting any claim as to its illegality. It is not worth while, however, to pursue the discussion further, since, by section 26 of the stock corporation law (chapter 688, Laws 1892), it is enacted:

"If a stockholder shall be indebted to the corporation, the directors may refuse to consent to a transfer of his stock until such indebtedness is paid, provided a copy of this section is written or printed upon the certificate of stock."

This law was enacted on the day upon which the plaintiff commenced his action. By the section cited, authority is vested in the directors to impose substantially the same restriction on the negotiability of the stock as that of which the plaintiff complains. From the time of this law, the plaintiff was therefore entitled to no relief in this matter.

The second subject of complaint was that, though the bank had continuously earned money, only one dividend had been paid from

the organization of the bank to the commencement of the action, the profits being allowed to accumulate as a surplus. After the commencement of the action, the bank commenced declaring dividends at the rate of 8 per cent. per annum, which has been continued up to now. Still, if the plaintiff had any cause of complaint in this respect at the time he brought the action, the subsequent conduct of the bank would not defeat his right to maintain the action. The broad claim is made on behalf of the plaintiff that the accumulation of profits for the purpose of creating a surplus is a violation of the articles of association, and illegal, because it is practically increasing the capital stock. That it does, in one sense, increase the capital of the bank, is unquestionable; but we have never known of such action being challenged. The propriety of accumulating some surplus is too palpable to require extended discussion. When the capital stock of a bank is impaired, the deficiency must be made good by an assessment on the stockholders; and, in case the deficiency is not made good within 60 days, proceedings may be instituted against it, as in the case of insolvent corporations. Hence, if such a corporation should divide all its profits and accumulate no surplus, any business loss would subject it to the hazard of a receivership and the loss of its corporate life. This danger is so apparent that of late years it has been common, on the formation of banks or trust companies, to pay in 50 or 100 per cent. in addition to the nominal capital stock; so that the corporation may begin business with a surplus. Some banks have accumulated so much of their profits that the surplus is from 10 to 30 times the amount of the capital stock. These banks stand the highest in the commercial world. Nor is this conduct illegal.

In Williams v. Telegraph Co., 93 N. Y. 162, the court said:

"When a corporation has a surplus, whether a dividend shall be made, and, if made, how much it shall be, and when and where it shall be payable, rests in the fair and honest discretion of the directors, uncontrolled by the courts."

In McNab v. Manufacturing Co., 62 Hun, 18, 16 N. Y. Supp. 448, it was held:

"That the rate of dividend to be paid and the amount of surplus to be retained by a corporation must rest in the fair and honest discretion of its trustees."

In the case of Hiscock v. Lacy, 9 Misc. Rep. 578, 30 N. Y. Supp. 860, a national bank was decreed to declare a dividend. In the opinion there delivered by Judge Vann, there is an elaborate review of the authorities on the right of courts to control the action of the directors of a corporation. The rule already cited, that the question of the declaration of dividends rests in a fair and honest discretion of the directors, uncontrolled by the courts, is conceded. The decision proceeded in that case solely on the ground that the action of the bank in refusing to declare dividends did not proceed from "the fair and honest discretion of di-

rectors," but in pursuance of a scheme adopted by the majority owners of the stock to injure the minority owners, on account of personal enmity between the parties.

In the case before us there is nothing to show that the action of the directors in accumulating the surplus proceeded from any other motive than the good of the bank. Whether it was wise to accumulate all the earnings, instead of distributing part to the stockholders in dividends, was a question which rested in the discretion of the directors, and as to which we are called upon to express no opinion. The plaintiff, for some time, seems to have sanctioned that course. However, even if the course was continued against his opposition, there is nothing in the case before us which would give the court the right to interfere with the action of the directors.

A further subject of complaint is the call loans made by the bank to the president. These loans are criticised in two respects: First, as being unauthorized by the directors; second, as exceeding the amount permitted by the statute to be loaned to one of the directors. The defendants contend that, under the by-law which conferred on the president and cashier the power "to perform all such duties as are usually incidental to such office," these officers were authorized to make the loans. The evidence in the case shows that it is the custom for the president or cashier to make call loans without consultation with the directors or officers. It may be conceded that this by-law and the general usage would authorize the cashier and president to make call loans to others than themselves, but it would not authorize those officers to loan to themselves.

In Bank of New York, etc., Ass'n v. American Dock & Trust Co., 143 N. Y. 559, 38 N. E. 713, it was held that the president of a warehouse company was not authorized by a general by-law, even as against a bona fide holder for value, to issue warehouse receipts in his own favor, which would bind the company. The general rule is there thus stated:

"It is an acknowledged principle of the law of agency that a general power or authority given to the agent to do an act in behalf of the principal does not extend to a case where it appears that the agent himself is the person interested on the other side."

But, while this is the rule, it was entirely within the power of the directors to authorize the officers to loan even to themselves; and, if the directors knew that these officers were so loaning the money of the bank, they "gave them authority by acquiescing in its exercise." Hanover Nat. Bank v. American Dock & Trust Co., 148 N. Y. 612, 43 N. E. 72; Fifth Nat. Bank v. Navassa Phosphate Co., 119 N. Y. 256–261, 23 N. E. 737.

In the present case it appears that there were a great number or rather a long series of such loans. The trial court found, as a matter of fact, that the plaintiff and the other directors knew that such call loans were being made to the defendant Rogers, and that the loans were made with the consent and acquiescence of

the plaintiff. The evidence justifies this finding, and it disposes of the question of authority to make the loans.

The claim is further made that some of these loans, which exceeded in amount one-third the capital stock of the bank, were illegal. By section 179, c. 409, Laws 1882, it is made unlawful for the directors of any moneyed corporation to make any loans or discounts to the directors of such corporation to an amount exceeding in the aggregate one-third of the capital stock of such corporation actually paid in and possessed. By section 214 of the act cited, the term "moneyed corporation" is directed to be construed to mean every corporation having banking powers. By section 57, every banking association which had been formed or organized under the provisions of the act entitled "An act to authorize the business of banking," passed April 18, 1838, is made subject to the provisions of sections 195 to 213 of the statute then enacted. The defendant bank was incorporated under the act of 1838, and, until the statute of 1882, was subject to no limitation as to amount of loans to directors. On the enactment of the law of 1882, the question arose whether banks formed under the act of 1838 were subject to all the limitations prescribed by the act of 1882. The matter was referred, by the banking department, to the attorney general, who advised the department that, in his opinion, the express direction that such banks should be subject to the provisions of sections 195 to 213 of the statute of 1882 excluded the remaining portion of the statute from applying to them. The banking department acted on this opinion, and notified the defendant bank of its tenor and effect. The question here involved is a doubtful one. We are inclined to concur in the view expressed by the attorney general. It would be not profitable to discuss the question at any great length, for it no longer exists, both statutes having been swept away by the legislation of 1892. Even if, as a matter of law, the construction of the act of 1882 adopted by the attorney general was erroneous, still the officers of the bank could not be reproached for misconduct in acting in accordance with it. Since 1892 the law imposes no longer any such limitation. All the loans made to the president had been paid up, and no loss had occurred to the bank through such loans. The charge that the loans were made at less than the market rate of interest is not established by the evidence, and the trial court has tound to the contrary. As to the wisdom of the directors of a bank permitting its officers to make loans to themselves without the express sanction of the board in each particular case we have a very clear opinion; but, if a board of directors does see fit to confer such power, we cannot interfere with its exercise, unless such exercise is dishonest or fraudulent. Our opinion, that these loans were neither illegal nor unauthorized, disposes of the claim that the defendant Rogers should account for the profits made by him from the moneys thus loaned.

The other subjects of complaint, the purchase of the bank lot, the claim of embezzlement by the cashier, and the keeping of the books, involve merely questions of fact, which the trial court has

decided adversely to the plaintiff. We think those findings were justified by the evidence, and see no grounds to warrant our interference with them.

The judgment appealed from should be affirmed, with costs. All concur.