[S. F. No. 2454.   In Bank.—July 25, 1904.]

## J. W. MULCAHY, Appellant, v. HIBERNIA SAVINGS AND LOAN SOCIETY et al., Respondents.

SAVINGS BANK—RESERVE FUND—DISCRETION OF DIRECTORS AS TO MAXIMUM.—Where the charter of a savings and loan corporation requires it to create a minimum reserve fund of at least one hundred thousand dollars, and specifies no maximum amount, and the discretion of its directors is not limited by any statute, or by the by-laws of the corporation, so long as they exercise an honest judgment, with honest motives, and for honest ends, the directors have absolute power and discretion in fixing the maximum amount of the reserve fund, so as to provide for present and future contingencies, and fully conserve and protect the rights of their depositors by providing for payment of possible losses. When they have acted as their best judgment dictates, their action is not subject to control by the courts.

ID.—LIMIT OF DISCRETION—CONTROL BY COURTS—PLEADING.—The discretion of the directors of the savings bank is not arbitrary, but must be exercised fairly and honestly; and if it appears that the proceedings of the corporation are unfair, or that its officers are acting wantonly and in bad faith, or in disregard of the rights of the members of the corporation relative to such reserve fund, the courts will intervene. But in order to warrant such intervention, the complaint must allege facts showing such misconduct of the

directors, and that they are improperly diverting money into a reserve fund which the members of the corporation are entitled to have distributed to them as dividends.

ID.—INSUFFICIENT COMPLAINT.—Where the allegations of a complaint seeking the intervention of the court consist of an erroneous view of the terms of the statute under which the savings bank is organized, or of conclusions, opinions, or conjectures upon the part of the pleader, without any recital of the facts upon which they are predicated, and without any *data* as to the indebtedness of the bank to its depositors, or from which the court can see that the reserve fund created is unwarranted, the complaint is insufficient upon general demurrer.

ID.—COMPARISON WITH OTHER BANKS.—An averment in the complaint that no other bank provides so great a reserve fund, without furnishing any criterion for determining whether the reserve fund of the defendant society is excessive or not, or any data from which the court can make a comparison between other banks and the defendant bank, or showing the volume of business done by each, is insufficient. What would be a legitimate reserve fund as to one bank might be unwarranted as to another.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

William T. Baggett, for Appellant.

Tobin & Tobin, Garber, Creswell & Garber, and J. J. Dwyer, for Respondents.

LORIGAN, J.—Plaintiff in his own behalf, and on behalf of others similarly situated, alleging that he, and they, are members of said society, brings this action to compel the distribution of a portion of the reserve fund of said society among its members.

It is alleged that said fund amounts to $2,500,000, and plaintiff seeks to have all but $750,000 thereof so distributed.

Defendants demurred to said complaint on various grounds, many of which were sustained, and, plaintiff declining to amend, a judgment dismissing the action was entered. From this judgment he appeals.

One of the grounds upon which the demurrer was sustained (though sustained upon many others) was, that the complaint did not state a cause of action. In that regard it was

urged in the court below, as it is insisted on here, that, for several reasons, said complaint is vulnerable in this respect, but particularly so because the facts therein stated do not show that plaintiff is a member of said society, or entitled to participate in said reserve fund, and, further, assuming that the complaint does show that he was a member, and that he would ultimately be entitled to participate, still there is an absence of those essential allegations which must appear in order to show that he is entitled to have a present distribution made by the society of any part of said reserve fund.

As we are satisfied that the demurrer was, at least, properly sustained for this last reason, it will be unnecessary to dispose of any other of the various points raised, or to determine whether the complaint sufficiently shows that plaintiff is a member of said society, because, assuming that it does, nevertheless it fails to show sufficient grounds for any judicial interference with the action of the board of directors of said society relative to this fund.

In order to properly point out their insufficiency in this respect, it is necessary to set forth the allegations of the complaint on that subject, which are as follows:—

"Plaintiff further avers that the directors of the defendant corporation have retained an amount of money on each dividend day far in excess of five (5) per cent of the net profits of said corporation, to wit: more than two millions ($2,000,-000) of dollars, and has placed the same in a reserve fund, and now retains the same in the reserve fund of said society. And plaintiff further avers that said society, and said defendant directors of said society have unlawfully and fraudulently, refused to make any provision whatsoever by its by-laws, or otherwise, for the disposal of any excess in the reserve fund of said society over one hundred thousand ($100,000) dollars as provided by the said act of 1862, and for the purpose and object of depriving plaintiff and all others similarly situated from participating in said earnings, and for the purpose of dividing the same among themselves, and appropriating the same to their own use, upon the dissolution of the corporation.

"And plaintiff further avers, that it is unlawful, and contrary to the provisions of the said act of 1862, for the said society or the said defendant directors thereof, to retain the said net earnings in said reserve fund in an amount in excess

of one hundred thousand ($100,000) dollars; and plaintiff further avers that it is not necessary for the uses, benefits, or interests of said corporation, or for its financial standing or otherwise that there be kept in reserve the said surplus or reserve fund, the enormous sum of two million five hundred thousand ($2,500,000) dollars, or any other sum in excess of seven hundred and fifty thousand ($750,000) dollars, for the reason, that said society is not now indebted to any one except its said depositors, and has not made any unpaid losses in its business, and for the further reason, that no other savings and loan society, or banking corporation, in this state, carries in its reserve fund, for the purpose of paying any losses which it might sustain in pursuance of its lawful business, a sum in excess of one million ($1,000,000) dollars.

"And plaintiff further avers that it is the duty of said defendant society, and said defendant directors of said corporation, to pay out to plaintiff, and all other persons similarly situated, who are by law entitled to participate in the profits of said society, all of said moneys now accumulated and held as a reserve fund by said society, except the sum of seven hundred and fifty thousand ($750,000) dollars, and it is in fraud of the rights of plaintiff, and all others similarly situated for the said society, and directors thereof, to deny, and refuse, to make distribution of the profits of said society as aforesaid."

The original certificate of incorporation of the Hibernia Savings and Loan Society was filed in 1859, under the act of 1853 (Stats. 1853, p. 87). Thereafter, in 1864, another certificate of incorporation was filed under the act of 1862 (Stats. 1862, p. 200).

It is contended by appellant that the certificate filed in 1864 operated simply as a continuance of the existence of the incorporation formed under the act of 1853; by the respondents that it was the formation of a new and distinct corporation under the act of 1862. We do not purpose passing upon the merits of this contention as to what was the effect of filing the new certificate of incorporation under the act of 1862, but as both sides agree that the society is incorporated under this act, either as a continuing, or as a new corporation—the dispute being solely as to the effect of the certificate—we refer to the act to particularly call attention to section 11 thereof, which both parties concede governs in the matter of

the creation of a reserve fund by the society, and the disposi-
tion which may be made of it, intermediately and ultimately.

Section 11, referred to, provides that any corporation
formed under the act, and having no capital stock, shall retain
on each dividend day at least five per cent of the net profits
of the corporation, to constitute a reserve fund, which shall
be invested in the same manner as other funds of the corpora-
tion, and shall be used towards paying any of the losses which
the corporation may sustain in pursuance of its lawful busi-
ness; and that the corporation may provide, by its by-laws,
for the disposal of any excess in the reserve fund over one
hundred thousand dollars, and the final disposal upon the
dissolution of the corporation of the reserve fund, or re-
mainder thereof, after payment of losses.

It will be observed from the language of this section that
the allegation in that part of the complaint above recited
which avers that it is "contrary to the provisions of said
act of 1862 for the society or its directors . . . to retain
. . . net earnings in said reserve fund in an amount in excess
of one hundred thousand ($100,000) dollars" is not correct.
The plain provision of the section, and it requires no critical
examination to discover it, is that the duty is imposed upon
the society of creating a reserve fund of at least one hundred
thousand dollars.  There is no provision that the reserve fund
shall not exceed that amount.  That sum is simply fixed as a
minimum of reserve.  There is no direction that it shall not
exceed it.  No maximum amount is specified; the question as
to what sum in excess of one hundred thousand dollars shall
be reserved is left by the statute entirely to the discretion of
the board of directors.

This being true, the familiar rule of law applies that where
the powers of a board of directors of a corporation are un-
limited and unrestrained with reference to the disposition
that shall be made of the surplus funds of the corporation,
they are at liberty to exercise a very large discretion in that
respect.  That so long as they act in the exercise of an honest
judgment, with honest motives, and for honest ends, their
power over such funds is absolute.  They have a right to act
with regard to them as their best judgment determines is
necessary or judicious, and where they have done this their
action is not subject to control by the court.

Particularly is this true relative to banking corporations where it is generally committed to the directors to exercise their best judgment upon a knowledge of the affairs of the bank, the requirements of its business and the extent of its liability to its depositors and other creditors; where it must devolve upon them to take such precautions, and adopt such measures concerning a reserve fund and its amount, as will amply enable them to provide for present and future contingencies, and fully conserve and protect the rights of their depositors by prudently providing for prompt payment of possible losses. In the nature of things it would be practically impossible to determine in advance, with any precision or accuracy, just what amount would be safe to retain for such purpose, and hence a discretion on the subject must necessarily be left to the proper officers of the corporation. And where this discretion is unrestrained by either the charter or by-laws of the corporation, or the statutes of the state, and is exercised in good faith, the courts will not interfere in the matter, or attempt to control the action of the corporation. (*Excelsior H. & M. Co.* v. *Pierce,* 90 Cal. 131; *Reynolds* v. *Bank of Mt. Vernon,* 6 App. Div. 62, 39 N. Y. Sup. 626; *McNab* v. *McNab & Harlan Mfg. Co.,* 62 Hun, 21, 16 N. Y. Sup. 448; *Williams* v. *Western Union Tel. Co.,* 93 N. Y. 162; *Park* v. *Grant Locomotive Works,* 40 N. J. Eq. 118.)

As is said in *Reynolds* v. *Bank of Mt. Vernon,* 6 App. Div. 62, 39 N. Y. Sup. 626: "The propriety of accumulating some surplus is too palpable to require extended discussion. When the capital stock of a bank is impaired, the deficiency must be made good by an assessment on the stockholders; and, in case the deficiency is not made good within sixty days, proceedings may be instituted against it, as in case of insolvent corporations. Hence, if such a corporation should divide all its profits and accumulate no surplus, any business loss would subject it to the hazard of a receivership and the loss of its corporate life. The danger is so apparent that of late years it has been common, on the formation of banks or trust companies, to pay in fifty or one hundred per cent in addition to the nominal capital stock; so that the corporation may begin business with a surplus. Some banks have accumulated so much of their profits that the surplus is from ten to thirty times the amount of the capital stock. These banks stand the

highest in the commercial world. Nor is their conduct illegal.''

Also in *Williams* v. *Western Union Tel. Co.,* 93 N. Y. 162, the court says: ''When a corporation has a surplus, whether a dividend shall be made, and, if made, how much it shall be, and when and where it shall be payable, rests in the fair and honest discretion of the directors, uncontrolled by the courts.''

And in *McNab* v. *McNab & Harlan Mfg. Co.,* 62 Hun, 21, 16 N. Y. Sup. 448, the same rule is announced: ''That the rate of dividends to be paid, and the amount of surplus to be retained by a corporation, must rest in the fair and honest discretion of the trustees. . . . Whether it was wise to accumulate all the earnings, instead of distributing part to the stockholders in dividends, was a question which rested in the discretion of the directors, and as to which we are called upon to express no opinion. The plaintiff for some time seems to have sanctioned that course. However, even if the course was continued against his opposition, there is nothing in the case before us which would give the court the right to interfere with the action of the directors.''

This is the general rule applying in cases where there is no express power conferred on the directors with reference to the accumulation of a surplus, and must apply all the more effectively where, as in the case at bar, the whole matter is left to the discretion of the directors under the statute, which constitutes the society's charter.

This discretion, it is true, is not an arbitrary one. It must be exercised fairly and honestly, and when it appears that the proceedings of the corporation are unfair; that its officers are acting wantonly and in bad faith, or in disregard of the rights of the members of the corporation relative to such reserve fund, the courts will intervene.

In order to warrant this intervention, however, there must be alleged in the complaint facts which show that the directors are guilty of such misconduct, and are improperly diverting into a reserve fund money which the members of the corporation are entitled to have distributed to them as dividends; because, where discretion is given to create a reserve fund, unrestricted as to its amount, the presumption is that such a fund as the directors have reserved was reserved for a lawful and proper purpose, and in entire good faith.

Now, when the allegations of the complaint are examined,

we find no facts set forth in it to meet the requirements of this rule.

It is true, that in other parts of the complaint than this we have quoted, the pleader has averred facts from which he insists that the directors of the society acted in bad faith in endeavoring to exclude him as a member. But, assuming this to be true, and that any action of the society, or its directors, in that regard, was inoperative and ineffectual and that plaintiff is a member, yet, this unsuccessful effort would not affect the question as to the reserve fund.

It was not only necessary for him to show that he was a member (which, for the purpose of this case we have assumed), but in addition it was necessary for him to aver and show that, in violation of his rights as such member, the directors had refused, or neglected, to declare dividends to which he was entitled, without legal or just reason for so refusing, and notwithstanding they had in their hands ample funds which should be devoted to that purpose. It is only upon such a showing that a court can interfere with the discretion of the directors and compel a distribution.

Now, recurring to the quoted allegations of the complaint, which in reality form the basis of plaintiff's claim, that the directors acted in bad faith in creating this large reserve fund, and as grounds upon which the court should intervene to compel its distribution, we find that such allegations as are made consist of an erroneous view of the terms of the statute, or of conclusions, or conjectures, upon the part of the pleader, without any recital of the facts upon which they are predicated, and which facts, if they existed, should have been set forth in order that the court might itself determine whether they sufficiently warranted an exercise of the intervention invoked.

To particularize: It is alleged that the directors have retained on dividend day an amount exceeding five per cent of the net profits,—to wit, more than two million dollars,—and placed it in this reserve fund; that the society and the directors thereof have unlawfully and fraudulently refused to make provision for the disposal of said reserve fund in excess of one hundred thousand dollars by its by-laws or otherwise, as provided in the act of 1862.

When simplified, this allegation amounts to nothing more

than a declaration that no provision has been made to keep the reserve fund within one hundred thousand dollars. But section 11 of the statute does not require this, and no interpretation of the pleader can change the terms of the law. The section declared that *not less* than five per cent shall be retained for a reserve fund, of not less than one hundred thousand dollars, and declares that the society *may,* when it exceeds that amount, provide for its distribution. There is no direction that more than five per cent of the profits shall not be retained, or that the reserve fund shall not exceed one hundred thousand dollars. As to what the amount of either of these shall be, is left entirely to the discretion of the directors.

Neither is the allegation that no provision has been made in the by-laws or otherwise to dispose of any part of the surplus exceeding one hundred thousand dollars of any moment. The adoption of a by-law providing for a disposition of such surplus among the members, intermediate to the dissolution of the corporation, could only be necessary when the discretion of the directors to so distribute was to be exercised. Until then there could be no dereliction of duty in that respect, as there would be no necessity for its adoption. And it does not follow, because no by-law was passed relative to the intermediate disposition of any amount in excess of one hundred thousand dollars, that the society has failed to pass by-laws for the distribution of the entire surplus fund upon dissolution of the corporation, which seems to be the only positive duty relative to the distribution of such surplus fund enjoined by the act under which the society was created.

Of course, the fact that the plaintiff charges their refusal to provide for a distribution of this fund as "unlawfully and fraudulently" made adds nothing to the strength of the allegation. We have pointed out that there was nothing unlawful about it, and hence it could not be fraudulent.

It is alleged, however, in this connection, that the directors refused to direct such surplus distributed, for the purpose of appropriating and dividing it among themselves upon the dissolution of the corporation. This, however, is simply the opinion of the pleader. He states no facts which warrant its expression, and it amounts to nothing as an allegation of fraud. If they are not entitled to it in law, they cannot get it, and if it belongs to the members, and the plaintiff is one of

them, they will get it upon the final distribution, if an intermediate distribution is never made, no matter what the disposition of the directors may be, or whether the money is kept in a reserve fund or not.

It is further averred that it is unnecessary for the uses, benefits, or financial standing of said corporation that there should be kept in the reserve fund the enormous fund of two million five hundred thousand dollars, or any other sum in excess of seven hundred and fifty thousand dollars. But this also is simply a conclusion of the pleader—the expression of his opinion upon the subject. Whether it is necessary or not to retain such a reserve fund is the very matter in question, and this is not to be determined from the pleader's opinion on the subject, but upon the statement of essential facts in the complaint from which the court can determine it. It is not enough for the pleader to state the legal effect or force of the facts; his conclusion upon them. He must aver them so that the court itself can reach a conclusion in the matter. (*Western Union Tel. Co.* v. *Henley*, 23 Ind. App. 14; *Cleveland etc. Ry. Co.* v. *Shrum*, 24 Ind. App. 96.) If the facts were stated the court might determine from them, counter to the pleader's conclusion, that it was necessary to retain such reserve, or, at least, that the facts stated did not disclose that the discretion committed to the directors under the statute had been improperly exercised.

And, to some extent, the plaintiff realized this, because his general allegation that the retention of such a reserve fund is unnecessary is followed by a recital of his reasons for deeming it so. As a basis for that conclusion he avers that it is unnecessary, for the reason that said society is not now indebted to any one except its depositors, and has no unpaid losses in its business, and because no banking corporation in the state carries a reserve fund in excess of one million dollars.

But what is its indebtedness to its depositors? That it is indebted to them is conceded by the allegation, and of course is the fact, and it is almost entirely to conserve the interests of these depositors and protect them that a reserve fund is ever created. That is the principal liability of a banking corporation. The complaint on that matter only says, generally, that the society is indebted to them, but to what extent it is so indebted is nowhere averred. Whether it is to the amount

of one million dollars or sixty million is not stated; the court is left entirely in the dark on the subject. No court could say whether a reserve fund of two million five hundred thousand dollars was justified in the discretion of the directors, unless some idea was conveyed in the complaint as to the amount of the deposits, and the condition upon which they were received and are payable by the society. There is no claim that there is any limit to the amount of deposits which this society might receive, and no information as to the actual deposits. The liability of the society and the danger of loss is proportionate to the amount for which it is liable to its depositors, and to give no information upon this subject is to furnish the court with no *data* from which it can determine whether the retention of a given reserve fund was wise, judicious, prudent, and necessary or not. The larger the deposits the larger should be the reserve fund to protect them, and no fund can be said to be excessive when no information is furnished as to the extent of the liability it is intended to protect.

Neither does the allegation of the complaint that the society has made no unpaid losses in its business aid the court. The purpose of a reserve fund is to provide against losses which may happen. The fact that the society has made no losses in the past is no guarantee that they may not be made in the future, and the reserve fund called on to pay them. The extent of the liability for such possible losses can only be determined from the amount of the deposits. If a given reserve fund is unnecessary and superfluous, it must be because it is disproportionate to the liability which it is created to protect, and whether it is so superfluous or disproportionate can never be determined unless the court is informed of the amount of that liability—the amount due depositors. No information whatever in this regard is furnished by the complaint, and it seems clear that a statement that the only indebtedness of the society is to its depositors, without showing what that indebtedness is, fails to impart to the court very essential information from which it may determine whether it is an abuse of discretion on the part of the directors to retain a particular amount as a reserve fund.

The same may be said of the allegation that no other bank provides for a reserve fund exceeding one million dollars.

This is no criterion of itself by which to determine whether the reserve fund of the defendant society is excessive or not. Aside from this statement, there is no *data* furnished in the complaint from which the court can make comparison between other banks and the defendant bank. The amount of deposits, or liability to other creditors of either, is not given. There is nothing averred of the relative proportion of business done by these other banks and the defendant society. What would be a legitimate reserve fund as to one might be unwarranted as to the other, and this would depend entirely upon a comparison of the volume of business done by both. Of this the complaint fails to speak. The disparity between some unnamed banks and the defendant society is alleged, without any *data* being given whereby a comparison might be made which would be pertinent to the question.

The last allegation in the complaint quoted needs no comment. It states no facts; it is solely a conclusion of law.

We have discussed all the allegations of the complaint upon which the right to have the reserve distributed is based, and as they fail to state a cause of action the demurrer to the complaint was properly sustained for that reason, and the judgment appealed from is affirmed.

Henshaw, J., McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., and Beatty, C. J., concurred.