[Civ. No. 18644. First Dist., Div. One. Nov. 28, 1960.]

MARY R. CAREW, Appellant, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

William C. Danielson for Appellant.

Tobin & Tobin, Sullivan, Roche, Johnson & Farraher and Brobeck, Phleger & Harrison for Respondents.

TOBRINER, J.—Appellant seeks a declaration that as a *depositor* of The Hibernia Savings and Loan Society, a membership corporation, she possessed the same rights in its reserve fund as the members of the society and that therefore she was entitled to share equally with the members upon the corporation's conversion to a stock structure and "distribution of capital stock into which said reserve fund was converted."

The summary judgment declares that a nonmember depositor of the society held no "interest in its property, assets or reserve fund or . . . to any of its capital stock or any proceeds thereof."[1]

Appellant presents no question of any factual issue for determination by the trial court; indeed she asserts that the by-laws and conditions of deposit attached to Cyril Tobin's affidavit, in support of respondents' motion for summary judgment, are determinative of her rights. Appellant makes no claim that all depositors, including appellant, did not receive the semiannual dividends or interest on their deposit balances at the same rate as every other depositor. The first amended complaint likewise alleges, on information and belief, that the society "paid to depositors only interest upon the amount of their deposits, and that no distribution of any dividend or share of profits was made to any depositor, but that profits were accumulated in said reserve fund. . . ."

The accepted facts disclose that The Hibernia Savings and Loan Society was incorporated in 1864 under the provisions of "An Act to provide for the Formation of Corporations for the Accumulation and Investment of Funds and Savings." (Stats. 1862, p. 199; Stats. 1864, p. 531.) In accordance with the purpose for which the corporation was formed, "that of aggregating the funds and savings of the members of said Corporation *and of others,* and of . . . investing the same for their common benefit," Hibernia's by-laws of 1864 provided for receipt of deposits by both members and nonmembers; article 22, in part, read: "Until otherwise provided . . . depositors shall be entitled to the same share of profits as members." (Emphasis added.)

This by-law was repealed on February 10, 1868; a series

---

[1] The court also decreed that appellant's only interest in respondent bank's assets was that "of a creditor [entitled] to the payment of the credit balance in his or her deposit account, and no claims to payment of any such credit balance are involved in this case." Hence no claim on that basis is before us here.

of amendments followed, and on July 13, 1875, articles 15 and 21 were adopted. Article 15 recites: "In January and July in each year, the Board of Directors shall examine the business of the Corporation during the preceding six months, and, *out of its earnings* during that period, *shall declare such dividends as they may deem safe and proper*; and so much of said earnings as may be necessary to pay such dividends is hereby appropriated and directed to be applied to the payment thereof. Dividends will be credited to the respective accounts as of the 21st day of January or the 21st day of July next before they are declared. *The Reserve Fund must get a dividend equal to that given to depositors who are not members,* (and also all entrance fees) in addition to the percentage of the net earnings required to be given it by law; but the Board of Directors may, if they deem it proper, pay the whole or any part of the expenses of the Corporation (including taxes) out of the Reserve Fund, or out of the income of the Reserve Fund. *Until otherwise provided by the Board of Directors, depositors who are not members shall get a dividend equal to that given to members.* Dividends must not be calculated for any fraction of dollars or of months. The month must be counted from the 21st day of one month to the 21st day of the next month. On balances drawn between one dividend day and another, interest will be allowed only at the rate of four per cent. per annum from the next preceding dividend day." (Emphasis added.)

Article 21 states: "The Board of Directors has the right to determine the terms and conditions upon which deposits will be received from persons not members of the Corporation."

In September of 1875 a savings account was opened with Hibernia in appellant's name. At this time appellant was only one year old; her name was signed in the "depositor's agreement book"; later appellant signed this book. Appellant maintained her original account until January 2, 1932. On this date the balance of the account was transferred from appellant's sole account to the joint account of "Mary Rose Carew or Claire Carew, payable to either or to the survivor of them." From the corporation's inception until its conversion to a stock bank in 1947 "no earnings, profits or net income was paid out by way of dividends from the inception of the bank . . . until it was converted by defendants into a stock bank in 1947, other than interest on deposits. . . ."

The deposit book contains, apparently, a document entitled "Conditions on Which Deposits May be Made With and Will be Repaid by The Hibernia Savings and Loan Society, a Corporation." The pertinent conditions read: "IV In January and July in each year, the Board of Directors shall examine the business of the Corporation during the preceding six months, and out of the earnings during that period will declare and pay dividends. Dividends will be credited to the respective accounts, as of the 21st day of January or the 21st day of July next before they are declared. . . . On balances drawn between one dividend day and another, only such interest will be allowed as the Board of Directors may from time to time determine. . . . VII The Board of Directors of said Corporation have power to alter and amend the foregoing conditions, and to add other conditions thereto; but any such alteration, amendment or addition shall not go into effect until the same shall have been posted in the office of the Corporation at least sixty days. The undersigned depositors with The Hibernia Savings and Loan Society . . . hereby severally agree to be governed by the foregoing Conditions and Agreement in regard to any and all deposits which they . . . may make with said Corporation, and in regard to all other transactions to which said Conditions may apply."

We shall set out the reasons for our conclusion that, even assuming the corporation's by-laws constituted a portion of the deposit contract, the rights of ownership to Hibernia's reserve fund did not flow from appellant's status as a depositor. This disposition of appellant's claim renders unnecessary discussion of respondents' contentions that the by-laws do not constitute a part of the deposit contract, and that, in any event, the 1946 in rem judgment bars any claim of appellant's ownership rights.

Section 11 of the 1862 act provides, in part: "And the Directors of any corporation formed under this Act, and having no capital stock, *shall retain, on each dividend day, at least* five per cent. of the net profits of the corporation, to constitute a Reserve Fund, which shall be invested in the same manner as other funds of the corporation . . .; and the corporation *may provide,* by its by-laws, for the disposal of any excess in the Reserve Fund, over one hundred thousand dollars. . . ." (Stats. 1862, p. 201; emphasis added.) Obviously the reserve fund constituted an asset of the corporation. "For corporate purposes only the corporate entity

owns the property, otherwise it belongs to the members,'' (*Huber* v. *Martin* (1906), 127 Wis. 412, 433 [105 N.W. 1031, 1135, 115 Am.St.Rep. 1023, 7 Ann.Cas. 400, 3 L.R.A. N.S. 653]) since, ''In the absence of a contrary provision, either in the statute, charter or by-laws, the rights of members of a non-stock corporation are the same as those of a stockholder in an ordinary corporation.'' (*Baird* v. *Tyler* (1946), 185 Va. 601 [39 S.E.2d 642, 645].)

Assuming *arguendo* that article 15 constituted a portion of appellant's contract of deposit, it did not give depositors equal rights in the reserve fund with the society's members. It merely required the society's directors to examine the corporation's business twice a year, January and July, and declare such dividends out of the corporation's earnings and profits of the *preceding* six months upon the deposit accounts as the directors ''*may* deem safe and proper.'' (Emphasis added.) The utilization of the word ''dividend'' indicates that Hibernia did not obligate itself to give each depositor a set percentage of his deposit for its use. This conclusion finds confirmation in the by-law's provision for the declaration of dividends out of the profits of the preceding six months; if no profits existed for such period Hibernia would not have been required to make any payment whatsoever to its depositors.

The word dividend ''is one of very general and indefinite meaning. It has not, in law, any particular and technical signification. Applicable to various subjects, it is not intelligible without knowing the matter to which it is meant to refer, and of course, where there is a context, it is liable to be affected by that context.'' (18 C. J., p. 1406.)

In the context of article 15 the word ''dividend'' becomes clothed with a meaning practically equivalent to that of interest; it composes a payment contingent upon two factors: ''earnings'' within the preceding six months and a decision of Hibernia's directors as to the amount of dividend that they consider safe and proper.

Neither Hibernia's by-laws nor the conditions of deposit compelled Hibernia's directors to follow any rigid formula in the declaration of dividends. On the contrary, article 15 endowed the directors with discretion; they were to declare out of the preceding six months' profits such dividends ''as they may deem safe and proper. . . .'' The directors' discretion in this respect is probably not as wide as their discretion vis-à-vis the right of members or stockholders to dividends. (For the latter point see *Mulcahy* v. *Hibernia*

*S. & L. Soc.* (1904), 144 Cal. 219, 224-225 [77 P. 910].) However, the principle stated in *Mulcahy,* that a member of a corporation seeking to compel the declaration of dividends must allege facts indicating an abuse of such discretion by the directors, applies equally here; indeed, the essence of a summary judgment proceeding is to insure that the parties possess evidence supporting their pleadings. Appellant's affidavits contain nothing which indicates that the reserve fund, or any portion of it, contains funds resulting from an abuse by the directors of their discretion.[2] These affidavits contain no allegations of any evidence that the utilization of some formal declaration of dividend would have exceeded the interest which appellant received.

The conditions of deposit, which appellant asserts treat both depositor and member alike, do not indicate any elevation of nonmember depositors to co-owners of the corporation; these conditions merely implement the 1875 by-law. Nor does the reference in these conditions to "interest nor dividend" advance appellant's position. These words were used in the same sense as in article 15, which, as we have indicated, did not raise a depositor's status to that of corporate co-owner.

Appellant relies upon *Cary* v. *San Francisco Savings Union* (1874), 22 Wall. (U.S.) 38 [22 L.Ed. 779], but that case does not support appellant's claim that her contract here afforded a share of the profits. In that case "At the expiration of every six months the directors were required to ascertain the amount of the profits of the business, and after deducting certain salaries and expenses, and setting apart a certain proportion not exceeding one-tenth, to the stockholders as a compensation for furnishing the capital, apportion the remainder for a dividend upon the capital stock, reserve fund, and deposits. . . ." (P. 39.) Since the contract provided for no fixed interest rate but for a division of earnings among depositors, the court held that under the pertinent act of Congress such division was taxable as a dividend. It did not even suggest that the depositor acquired an interest in the bank's assets.

We conclude that the depositorship of appellant does not

---

[2]While the opinion of Justice Spence in *Maguire* v. *Hibernia Savings & Loan Soc.* (1942), (Cal.App.) 128 P.2d 149, is, of course, not binding, we believe it clearly and helpfully analyzes the issue before us. (See pages 157 and 158 of the opinion.) The Supreme Court in granting a hearing in that case (23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]) did not reach this question but disposed of the case on procedural grounds.

as such endow her with rights in the reserve fund equivalent to those of a member.

We affirm the judgment.

Bray, P. J., and Ford, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 25, 1961. Peters, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.