W. H. MITCHELL AND WIFE ET ALS. v. AULANDER REALTY COMPANY, R. J. DUNNING ET AL.

(Filed 29 September, 1915.)

**1. Corporations — Certificates — Equitable Owners — Stock Transfer — Receivers.**

A purchaser of certificates of corporate stock at the sale by an administrator of a deceased owner to make assets, and deposited by the purchaser with another as collateral to his note, is the equitable owner, and may maintain a suit for the appointment of a receiver in insolvency proceedings, though the stock has not been transferred on the books of the company from the name of the original owner.

**2. Corporations—Certificates—Executor's Sale—Title of Purchasers—Devises.**

Where certificates of stock of a deceased owner have been sold by his executor to make assets to pay his debts, the effect of the will upon whether the legatee of the stock thereunder could have acquired it is not material as affecting the rights of the purchaser at the sale.

**3. Corporations—Majority Interests—Mismanagement—Rights of Minority—Receivers—Equity.**

While ordinarily the remedy for mismanagement of a corporation by its directors should be sought within the corporation, a different rule applies when the acts complained of are done by a majority and controlling interest, which can perpetuate the election of the same directors and manage the corporation for their own benefit; for then the minority stockholders are entitled to resort to a court of equity for relief.

**4. Corporations—Insolvency—Proof Sufficient.**

In an action by minority stockholders of a corporation to appoint a receiver in dissolution proceedings, it is unnecessary to establish a state of absolute and irremediable insolvency, under our statute; but it is sufficient to show that the majority in control are using the assets for their own benefit, receiving salaries, contrary to the provisions of the charter, when none are earned; investing corporate assets in enterprises of doubtful solvency controlled by them, and generally that the company is practically insolvent, and nothing can save it from mismanagement except the appointment of a receiver.

**5. Corporations—Receivers—Court's Discretion—Appeal and Error—Practice.**

The selection of a receiver for an insolvent corporation is a matter largely in the discretion of the trial judge and will not generally be re-

viewed on appeal unless this discretionary power has been greatly abused; and though the practice of appointing the plaintiff's attorney as such receiver is not commended, he will not be removed, as a matter of law, on appeal, though, as any other receiver, he may be removed upon application to the proper judge of the Superior Court. *Fisher v. Trust Co.*, 138 N. C., 102, cited and approved.

APPEAL by defendant from *Ferguson, J.,* at the May Term, 1915, of BERTIE.

Motion in this cause for appointment of a receiver. His Honor appointed a receiver for the defendant corporation, from which order the defendants appealed.

*Pruden & Pruden, Winborne & Winborne, Gilliam & Davenport, J. B. Martin, S. Brown Shepherd, Alexander Lassiter for the plaintiffs.*

*Smith & Banks, Winston & Matthews, R. C. Bridger for the defendants.*

BROWN, J.   This action is brought by the plaintiffs as stockholders in the defendant corporation for the purpose of dissolving it and having its assets distributed according to law, and to that end they ask that a receiver be appointed.

The defendants offer four objections to the relief sought by the plaintiffs, towit:

1. For the reason that the plaintiffs were never stockholders in the defendants' corporation, according to its by-laws, and that none of the stock of the said corporation was in the possession of the plaintiffs or appeared in their names on the books of the corporation, but was held as a collateral for a debt due by plaintiffs to a disinterested party at the beginning of the action.

2. For the reason that plaintiffs have forfeited all of the rights they had under the will by bringing this action, and that whatever estate was devised to them under the will was a conditional estate—condition subsequent—which defeated the estate when this action was brought.

3. For the reason that plaintiffs did not first seek redress for their alleged grievances within the corporation before the board of directors and stockholders before bringing this action.

4. For the reason that there is no insolvency in the management of this corporation.

We will consider them in the order named.

First. It is found as a fact that the stock claimed by the plaintiffs was the property of A. J. Dunning, deceased, and that in order to pay debts the stock was sold at public auction, and was purchased by the plaintiffs, and the certificates delivered to them. They deposited the certificates with one Mitchell as collateral security for plaintiffs' notes.

The stock has never been transferred to the plaintiff upon the stock ledger of the defendant corporation. It is, therefore, contended that the plaintiff has no title to the stock sufficient to maintain this action. There is no merit in this contention.

The plaintiffs are the equitable owners of the stock and it could be subjected to the payment of their debts, although not transferred upon the books of the corporation. The by-laws of the corporations requiring such transfers, it is generally understood, are made for the purpose of protecting the corporation, and has no effect upon the legal transfer of the ownership of the stock.

Millions of shares of stock in corporations are annually deposited with brokers as collateral security by the simple indorsement of the name of the owner upon the certificate, without any transfer upon the books of the company, and no one gainsays the fact that the broker acquires good title to the stock as security for his loan, and that the real owner may not only vote it at stockholders' meetings, but sue on it if necessary to protect his interests.

The exact point has been decided in the case of *Reinhardt v. Telephone Co.*, 71 N. J. Eq., page 70, in which it is held that, "Where the complainer in fact owned stock in the defendant corporation, he could sue for the appointment of a receiver for the corporation in insolvency proceedings, though the stock stood in the name of the broker by whom it was purchased for complainer." In the opinion of *Chancellor Pitney* many authorities are cited in its support.

Second. The terms of the will of A. J. Dunning, devising this stock to the plaintiffs, have no effect whatever upon their title, and, therefore, the question as to whether the plaintiffs took a conditional estate and that the subsequent condition defeated their estate when this action was brought, is of no value. It is admitted that the stock was sold by the executors to pay the debts of their testator, and the purchasers at the sale acquired a title independent of the will.

Third. It is a general rule, applicable to all corporations of this character, that individual stockholders, in their own name, are not the proper parties to assert the rights of the corporation. The action should generally be brought by and for the corporation itself. If its officers or other stockholders fail to do their duty in that respect, the remedy is, as a general rule, to be sought within the corporate organization. *Moore v. Silver Mining Co.*, 104 N. C., 534.

But it is well settled that if the alleged wrong is being perpetrated by a majority of the shareholders, who can perpetuate it by electing directors in their own interests at each successive election, and thus manage the corporation for their own benefit, then the minority are entitled to resort to a court of equity for redress. *Brewer v. Boston Theater Co.*, 104 Mass., 378.

In this case it is alleged and found as a fact that the control and management of the business of the defendant corporation is in the hands of these codefendants; that they control the majority of the stock; that some of them are enjoying the use and benefit of a part of the property of the company; that they are paying themselves salaries in direct disobedience to the charter of the company, which prohibits such salaries until dividends are earned and paid; that these defendants are not collecting the principal or the interest due the defendant corporation; and that its condition from the present management is such as to bring about the insolvency of the company.

The plaintiffs aver that they cannot obtain any relief from the corporation itself; that they are denied means of knowing the condition of the corporation and how its assets are being applied; that these defendants are the officers and managers of the corporation; that they are cutting and selling timber belonging to it, selling real estate and other property, collecting the money and refusing to account to the plaintiff stockholders for any of their acts.

It requires no argument, we think, to prove that upon these allegations, which are found to be true by the court below, the plaintiffs, as minority stockholders, have a right to maintain this action.

Fourth. In order to justify the appointment of a receiver under the allegations set out in the complaint, and the facts found, it is not necessary that the plaintiff should establish a state of absolute and irremediable insolvency upon the part of the defendant corporation. Our statute declares that corporations may be dissolved by civil action instituted by the corporation or stockholders or creditors, when the corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, or *be in imminent danger of insolvency, etc.*

The court finds, and the evidence establishes the fact, that at the time of the death of A. J. Dunning, Sr., who founded the corporation, the assets of the defendant company consisted of real estate, solvent credits, and stock in the Bertie Cotton Oil Mill; that the individual defendants are the majority stockholders of the Aulander Realty Company, and have had charge and control of the said property and its assets; that it further appears that W. S. Dunning, secretary and treasurer of the said company, purchased, before the death of A. J. Dunning, Sr., from the said company a lot of land at the sum of $2,000, in the year 1909, which is secured by four notes of $500 each; and no part of the principal has been paid upon the said indebtedness, and no interest collected.

And that another piece of property valued at $7,000 is occupied by R. J. Dunning, president of the defendant company, and there has been no income to the company derived from said property other than salary

or allowance as may have from time to time been charged for his services as president of said company.

It is further found that a portion of the assets of said company consisted of $13,000 credit, the indebtedness of the brick company, now J. J. House & Co., and no part of the principal of the said debt has been collected and no interest.

It further appears that four of the five shares of the Bertie Cotton Oil Mill have been disposed of.

And it further appears that the control and management of the business of the Aulander Realty Company, being in the hands of these directors, some of whom are enjoying the use and benefit of a part of the property of the company, and the management not collecting any of the principal or interest due defendant corporation, that its condition from the present management is such as to threaten loss, if not eventually insolvency of the company.

It further appears that these codefendants, R. J. Dunning, W. S. Dunning, and A. J. Dunning, Jr., officers of the defendant corporation, without any legal authority and greatly to the injury of the Aulander Company, took $15,000 of the assets of the Aulander Company and invested it in the stock of the R. J. Dunning Company, a corporation of doubtful solvency, in which these officers of the Aulander Company are personally interested.

It further appears that the charter of the Aulander Company provides that no fees or salaries shall be paid its officers until the company was able to declare and pay dividends on the preferred stock. Nevertheless, these officers permitted R. J. Dunning to take charge of and use for his private benefit a house and lot of the company, worth $7,000, as his salary as president of the company.

Taking all these facts to be true, as found by the judge, we think it almost beyond question that the Aulander Company is practically insolvent, and that nothing can save it from the mismanagement of the defendants except the appointment of a receiver.

It was contended upon the argument that it was error in the judge below to appoint Mr. Gilliam, one of the plaintiff's counsel of record, receiver. There is no such assignment of error in the record. Nevertheless, we will take notice of it.

It is not necessarily wrong to appoint an attorney in the cause receiver, although it is a practice not to be commended unless done by consent. Mr. High says: "It is not regarded as an abuse of judicial discretion to appoint as receiver the attorneys of the respective parties to the cause, and the court, in making such appointment, will not be interfered with upon appeal." High on Receivers, 69.

This matter is fully discussed in *Fisher v. Trust Co.*, 138 N. C., 102, and we commend to the judges and profession what is there so well said

by *Mr. Justice Connor.* The selection of a receiver is largely in the sound discretion of the judge of the Superior Court, and such discretion will not generally be reviewed unless it has been greatly abused. In case there is just ground for it, a receiver can always be removed upon application to the proper judge.

Affirmed.