G. L. AMICK v. W. V. COBLE, CHARLES R. COBLE, YANK D. COBLE, AND J. TALMADGE ISLEY, OFFICERS AND DIRECTORS OF THE CENTRAL GROCERY COMPANY, INC.

(Filed 8 January, 1943.)

**1. Appeal and Error § 29—**

Where defendants not only assign as error the several conclusions of law made by the court and on which the judgment below is founded, but also excepts to and assigns as error the findings of fact upon which the

conclusions of law are based, yet in their brief challenge only the conclusions of law and judgment, under Rule 28 of the Supreme Court the exceptions to the findings of fact will be taken as abandoned.

**2. Corporations § 16—**

In a suit under C. S., 1178, to compel the directors of a corporation to declare and pay dividends from profits for 1940 and 1941, in excess of the capital stock and working capital reserve, where all profits prior to 1940, except small amounts paid in dividends, had been, by consent of all stockholders, allowed to remain in the treasury as a surplus, and the directors having taken no action in good faith to designate a reserve as working capital for 1940 and 1941, there is no error in a judgment directing the payment of cash dividends from the profits for those years.

**3. Same—**

Where, in a suit to require that dividends be paid stockholders, C. S., 1178, it was not error for the court to refuse to order all profits, as shown by the company's statements for the years 1940-41, paid out in cash dividends, such profits being subject to deductions for income taxes, allowance for bad debts, and inventory adjustments; but the court erred in allowing a ten per cent deduction from such profits to cover probable expense, and the order should have directed the payment in dividends of the full net profits, the company showing at the end of 1941 a surplus of $38,000 on a capital of $7,800.

APPEAL by plaintiff and by defendants from *Carr, J.,* at 23 May, 1942, Term, of ALAMANCE.

Civil action to require defendants to pay dividends. C. S., 1178.

It is uncontroverted that Central Grocery Company, a corporation, was organized in 1927 by the plaintiff and defendant, W. V. Coble, with a paid-in capital stock of $10,000 composed of 100 shares of the par value of $100 per share, for the purpose of carrying on a general wholesale grocery business; that the corporation also borrowed $10,000 with which to do business; that plaintiff became secretary-treasurer and general manager of the corporation, and continued in that capacity until 15 February, 1940; that at the end of the year 1939, seventy-eight shares of the capital stock were outstanding—the other twenty-two shares having been bought in by the corporation and held as treasury stock; that also at the end of the year 1939 the corporation had built up a surplus of $39,971.38, in addition to earnings of $5,528.96 in that year, based upon merchandise inventory $38,614.93, as plaintiff contends, or $21,-623.89 based upon a merchandise inventory reduced to $29,389.15 as averred by defendants; that at a meeting of the board of directors held early in 1940, plaintiff, as secretary-treasurer and general manager, was superseded by defendant W. V. Coble; that the corporation made a profit in each of the years 1940 and 1941.

Plaintiff, in his complaint, seeks to have all of the surplus accumulated prior to 1940 declared as a stock dividend, and to have the profits for the years 1940 and 1941 paid out in cash dividends.

Upon hearing in Superior Court, a jury trial was waived and it was agreed that the court might find the facts and enter judgment accordingly: "From the pleadings, the evidence presented and admissions of the counsel during the hearing of the cause" as stated in the judgment rendered, the court found these facts:

"1. That the Central Grocery Company is a corporation organized in 1927 by the plaintiff and one of the defendants, W. V. Coble, and from that time until the present time has been engaged in the wholesale grocery business.

"2. That the plaintiff, G. L. Amick, was secretary-treasurer and general manager of said corporation until some time during the first of the year 1940, when he was voted out of the company as a paid officer by the other stockholders.

"3. That the outstanding capital stock of said company at the beginning of the year 1940 was 78 shares of the par value of $100.00; that the plaintiff, G. L. Amick, is the owner of 35 shares, and W. V. Coble is the owner of 25 shares, Charles R. Coble 9 shares, Yank D. Coble 6 shares, and J. Talmadge Isley 3 shares, and said corporation has been under the control and management of the said W. V. Coble and the other named defendant stockholders since the early part of 1940; and three of said defendants are brothers and J. Talmadge Isley is a nephew. That the said plaintiff, G. L. Amick, has had no connection with the management of said business since the early part of 1940. He has, however, attended stockholders' meetings, and is still listed as a member of the board of directors.

"4. That the annual statement of the assets and liabilities of said company for the year 1940 was attached to the complaint filed in this action and admitted to be the financial statement and condition of said company, showing both the balance statement of said assets and liabilities and statement of operations for the year 1940. That according to said statement, the defendant company made a net profit of $17,585.47, but it is found by the court that no income tax or other proper deductions had been allowed. That after income tax was paid and a definite sum set up for bad debts there was a net profit of $11,862.69. The court finds as a fact, however, that there had been an adjustment of inventory as compared with the inventory at the end of the year 1939, which statement is referred to as the Amick Statement and which showed an inventory at the end of the year 1939 of $38,614.93, and the statement under the Coble management showed that said inventory had been reduced from said amount to $29,389.15, a difference of $9,225.78, and this amount

is reflected in the showing of surplus or net profit at the end of the year 1940. Making this deduction of $9,225.78 from the net profit of $11,862.69, the defendant company would show a net profit for that year of at least $2,636.91, and the court finds that the said company made as a net profit for that year the said amount.

"5. A statement for the year 1941 was attached to the said complaint and admitted to be a true statement of the condition of said company and its operations at the end of 1941; that the net profit as shown by said statement was $9,993.36 before the payment of income tax and other taxes and before any sum was set aside for bad debts, and a completed statement shows that there is deducted from said sum for income tax purposes and bad debts the sum of $6,410.78; that additional sums were deducted for other taxes and adjustments showing a total deduction of $7,796.44, leaving a balance as net profit of $2,116.92.

"6. That the surplus of said company at the beginning of the year 1940 was approximately $44,075.00; and that the surplus of said company at the end of the year 1941 was approximately $43,056.14.

"7. That after this action was heard and before the court rendered judgment, the defendants caused a special meeting of the stockholders and directors to be called. The said meeting was called to be held on Thursday, May 7, 1942, at 8 o'clock p.m., at the office of the company in the City of Burlington. The notice stated that 'the purpose of this meeting is to establish the working capital of this company for the year 1942, and to designate by resolution a reserve as working capital for the years 1940 and 1941.' The meeting was held and the minutes of said meeting disclose that a resolution was passed designating a reserve as working capital for the year 1941 and also a resolution setting forth the working capital for the year 1942. The resolution discloses that for the year 1942 the said majority stockholders and directors voted and set aside the sum of $50,000 as working capital. It is found from an examination of the statement for the year 1941 and attached to the pleadings in this cause that the total net worth of the company at the end of the year 1941 was $50,856.14, and this was before any sum had been paid out for income taxes and other taxes or any reserve set up for bad debts, and that the completed statement for said year shows that the sum of $7,796.44 was deducted from the net profit for the year 1941, which is set out in Finding No. 5 of this judgment. That the defendants, majority stockholders and directors, by resolution set aside and reserved the sum of $43,500 as working capital for the year 1941, which also appears to be more than the surplus at the end of 1941 and before taxes had been paid and a reserve for bad debts set up. That the aforesaid meeting of the stockholders was held by and with the consent of the court and at the court's suggestion to the end that the court might have the evidence of

the action taken at said meeting before it prior to rendering judgment. The court, however, made no suggestion as to what action the stockholders should take with respect to the amount to be set aside for working capital. That the plaintiff attended said meeting and voted against all of said resolutions.

"8. That all of the defendants, majority stockholders and directors who constitute a family corporation did, during the year 1941 increase their salaries and voted themselves bonuses; that the salary of W. V. Coble had increased from $2,700.00 at the end of 1939 to the sum of $4,445.00, which included a bonus for the year 1941, and that the other officers' salary had been increased approximately one-third during said period.

"9. That the cash on hand at the end of the year 1940 was $4,505.78, and that the cash on hand at the end of the year 1941 was $1,352.46. That the said company is engaged in the sale of merchandise which is a turn-over in inventory and that it could have at the end of each of said years secured ample funds to pay dividends.

"10. Counsel for plaintiff and defendants admit and it is, therefore, found as a fact that prior to the year 1940 the stockholders and directors by mutual consent each year turned all of the net earnings of the corporation as the same were earned, except the amount declared as a dividend, back into the business of the corporation. These earnings were used in whatever way the corporation needed them, but by far the larger portion of them was used to increase the stock of goods owned by the corporation. There was never any resolution adopted with respect to such action.

"11. It is further found as a fact upon admission of the parties that at the regular annual meeting of stockholders and directors held in February, 1941, a four per cent (4%) dividend was declared and was paid to and received by all of the stockholders, including the plaintiff. That at the annual meeting in February, 1942, a five per cent (5%) dividend was declared, but the plaintiff refused to accept the dividend tendered him as a stockholder owning 35 shares of stock."

Upon such findings of fact the court concluded as matters of law:

"1. That the action of the defendants, stockholders, taken on May 7, 1942, in setting aside as working capital $50,000 for 1942 and $43,500 for 1941 as appears in the seventh finding of fact was apparently due to an incorrect interpretation of the meaning of the term "working capital" as the same applies to a wholesale grocery business whose assets consist largely of its stock of goods. That the defendants have no right in law or equity to set aside the whole of the surplus which for the most part is invested in the corporation's stock of merchandise as 'working capi-

tal.' That the sums so set aside are far in excess of that which could in good faith be legally set aside for said purpose.

"2. That after deducting the whole of the accumulated profits for 1940 and 1941 in the sum of $4,753.83 from the surplus on hand at the end of the year 1941, being the sum of $43,056.15, there will remain in said surplus $38,302.31, which is an amount far in excess of that which could in good faith be legally set aside for 'working capital.' That the plaintiff, therefore, has a clear legal right to have the whole of the net accumulated profits for the years 1940 and 1941 declared and paid out as dividends.

"3. That inasmuch as it appears that much of the surplus is invested in the stock of merchandise and the defendants will, no doubt, be required to convert merchandise into money or borrow money in lieu of converting merchandise into cash in order to pay what the stockholders are entitled to receive as a dividend, and this will require the defendants to incur some expense which the court finds should not exceed ten per cent (10%) of the amount of said net accumulated profits, and when said expense is deducted, there will be left at least the sum of $4,278.44, which should be declared and paid out in dividends.

"4. That if plaintiff is not entitled to a writ of *mandamus* he is entitled to relief in the form of a mandatory injunction commanding the defendants to declare and pay out the sum of $4,278.44 in dividends."

Upon such findings of fact and conclusions of law, the court "ordered, adjudged and decreed that the directors of the Central Grocery Company of Burlington, North Carolina, W. V. Coble, Charles R. Coble, Yank D. Coble, and J. Talmadge Isley, officers and directors of the Central Grocery Company, Inc., be, and are hereby commanded to immediately declare $4,278.44 as dividends to stockholders of said company payable on or not later than the 15th day of June, 1942, and the defendants to pay the costs of the action to be taxed by the clerk."

Both plaintiff and defendants except to the foregoing judgment and appeal to the Supreme Court, and assign error.

*Thos. C. Carter and John H. Vernon for plaintiff, as appellee and as appellant.*

*J. Elmer Long and Clarence Ross for defendants, appellants.*

### DEFENDANTS' APPEAL.

WINBORNE, J. While defendants not only assign as error the several conclusions of law upon which the judgment below is founded, and the judgment, but except to and assign as error the findings of fact made by the court upon which the conclusions of law are based, yet in their brief

they challenge only the correctness of the conclusions of law and the judgment. Hence, under Rule 28 of the Rules of Practice in the Supreme Court, 221 N. C., 554, the exception to the findings of fact will be taken as abandoned, leaving for consideration the challenge to the conclusions of law and judgment. As to these, and upon the facts found, we find no error of which defendants may complain. C. S., 1178. *Cannon v. Mills Co.,* 195 N. C., 119, 141 S. E., 344.

The statute relating to corporations, chapter 22, Consolidated Statutes of North Carolina, section 1178, provides that: "The directors of every corporation created under this chapter, shall, in January of each year, unless some specific time for that purpose is fixed in its charter, or by-laws, and in that case at the time so fixed, after reserving, over and above its capital stock paid in, as a working capital for the corporation, whatever sum has been fixed by the stockholders, declare a dividend among its stockholders of the whole of its accumulated profits exceeding the amount reserved, and pay it to the stockholders on demand. . . ."

The court finds as a fact that at the beginning of the year 1940 the corporation had a surplus of approximately $44,075.00, and at the end of year 1941 the surplus was approximately $43,156.14. Also while the court further finds that prior to 1940 the stockholders paid only small dividends and the earnings were permitted to remain in the treasury of the company and be used in whatever way the corporation needed them, and mainly in the increase of stock of goods, it also finds that no corporate resolution had been adopted with respect to this surplus. Moreover, it appears that no corporate action was taken by the stockholders until after the hearing of this action in the court below, when, at the suggestion, and with the consent of the court, a special meeting of stockholders and of directors was called at the instance of defendants, the stated purpose of which was "to establish the working capital of this company for the year 1942, and to designate by resolution a reserve as working capital for the years 1940 and 1941." And the court finds that at such meeting the stockholders by majority vote set aside as working capital for the year 1941 an amount which is more than the surplus at the end of that year—before taxes had been paid and a reserve for bad debts set up. Upon this the court in effect holds that the defendants as majority stockholders did not act in good faith. Therefore, if it be conceded that at such meeting the majority stockholders, acting in good faith, could have set aside a working capital after the institution of this action, the ruling below is tantamount to holding that no such action has been taken in good faith. The effect of this is that no valid corporate action has been taken with respect to setting aside a working capital either before or after the institution of this action. Consequently, the

accumulated profits are available for dividends, and the directors are controlled by the provisions of C. S., 1178, and have no discretion with respect to the performance of the duty imposed. *Cannon v. Mills Co., supra.* But it appears that the plaintiff seeks to have paid in cash only the profits for the years 1940 and 1941, and there is, therefore, no error in the judgment directing the payment of cash dividends from the profits for those years.

### PLAINTIFF'S APPEAL.

Plaintiff assigns as error the refusal of the court to order paid as cash dividends the whole of the profits for the years 1940 and 1941, as shown in the annual statements rendered at the end of those years, respectively. However, the court finds that the profits shown on the 1940 statement are subject to income tax, to allowance for bad debts, and to inventory adjustment; and that the profits shown on the statement for the year 1941 are subject to income tax and to deduction for bad debts, thereby reducing the total profits for those years to $4,753.83. Manifestly, the income tax, allowance for bad debts, and the inventory adjustment are properly deductible in order to ascertain the net profits. However, we are of opinion that the court erred in allowing ten per cent of the net accumulated profits for 1940 and 1941 to be deducted to cover probable expenses. The order should have directed the payment of the full amount of $4,753.83. That this may be done without impairing the capital structure of the corporation is, on this record, patent. For after paying this amount as dividend, there still remains of the surplus as of the end of the year 1941, the sum of $38,302.31, on a paid-in and outstanding capital of $7,800.00, as shown by facts found by the court to which no exceptions are presented.

As the court rendered no judgment with respect to the payment of the accumulated profits prior to the year 1940, we make no ruling with regard thereto, and leave the matter for future determination in this action, if any of the parties so move.

On defendants' appeal—Affirmed.

On plaintiff's appeal—Modified and affirmed.