67 S.E.2d 355 (1951)
234 N.C. 331
GAINES
v.
LONG MFG. CO., Inc. et al.
No. 100.
Supreme Court of North Carolina.
October 31, 1951.
*356 Ruark & Ruark and Joseph C. Moore, Jr., Raleigh, and Battle, Winslow, Merrell & Taylor, Rocky Mount, for plaintiff, appellee.
Henry C. Bourne, Tarboro, for defendants, appellants.
JOHNSON, Justice.
The defendants by demurring to the sufficiency of the complaint to state a cause of action admit as true every material fact properly alleged. Gaines v. Long Manufacturing Company, Inc., N.C., 67 S.E.2d 350; Hall v. Cable Dairies, Inc., N.C., 67 S.E.2d 63; Bryant v. Little River Ice Co., 233 N.C. 266, 63 S.E.2d 547. Under the Code system of pleading which prevails in this jurisdiction, it is settled policy that actions shall be tried upon their merits, and to that end pleadings are construed liberally, with every reasonable intendment being adopted in favor of the pleader, so that a pleading will not be overthrown by a demurrer unless it be wholly insufficient. "`If in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, * * *. It must be fatally defective before it will be rejected as insufficient.'" Hoke v. Glenn, 167 N.C. 594, 83 S.E. 807, 808; North Carolina Corp. Comm. v. Harnett County Trust Co., 192 N.C. 246, 134 S.E. 656.
In substance, the pertinent facts alleged in the complaint are these:
1. That the defendant, Long Manufacturing Company, Inc., was chartered under the laws of North Carolina September 13, 1946, with an authorized capital stock of 1,000 shares of $100 par value each. The corporation began business with an original paid-in capital of only $1,000, represented by 10 shares of stock. No further stock has ever been issued. The original ten shares are now outstanding. The plaintiff *357 owns two shares, with the remaining eight shares being owned by these defendants, in the proportions as indicated: W. R. Long, six shares; John G. Long, one share; and Mary Ellen Forbes, one share.
2. The plaintiff paid full value for his two shares of stock and served as Secretary and Treasurer of the corporation from the time of its organization in 1946 until June 30, 1949, when he resigned, and since that time he has not been an officer of the corporation.
3. The defendants W. R. Long, John G. Long, and Mary Ellen Forbes (who are brothers and sister) constitute the present board of directors of the corporation. They were elected at the January 8, 1951, annual meeting of the stockholders. At the meeting of the board of directors held the same day, W. R. Long was elected President; John G. Long was elected Vice-President; and J. O. Hall (although being neither a director nor a stockholder) was elected Secretary and Treasurer of the corporation.
4. The corporation has prospered from its inception; for the fiscal year ending October 31, 1947, the first year of operations, net profits after all taxes were $193,707.62; for the year ending October 31, 1948, net profits after taxes amounted to $32,142.57; for the year ending October 31, 1949, net profits after taxes were $19,317.43; and for the year ending October 31, 1950, net profits after taxes were $50,367.05.
At the end of the fiscal year October 31, 1950, the corporation had current assets of $352,130.24, including cash on hand in banks of $146,124.92. At that time the corporation had paid-in capital and earned surplus of $296,387.47 "and was amply solvent and was not in need of any additional operating capital"; that at the time of the commencement of this suit the financial condition of the corporation was substantially the same as on October 31, 1950.
5. At the January 8, 1951, annual meeting of the stockholders of the corporation two resolutions "were introduced by the defendant John G. Long and carried by the votes of the defendants W. R. Long, John G. Long and Mary Ellen Forbes, over the protest(s) of the plaintiff, who was present and voted his 2 shares of stock against said resolutions."
The first resolution recites that whereas the books of the corporation show as of October 31, 1950, an earned surplus of $295,387.47, nevertheless the corporation "is badly in need of additional working capital to carry on its business." And, thereupon, the resolution directs the payment from earned surplus of a dividend of six per centum on the outstanding capital stock to stockholders of record as of January 8, 1951, (amounting in all to $60, with further direction "that the remaining part of the surplus fund in the amount of $295, 327.47 is hereby fixed and designated by the stockholders as working capital of said corporation."
The second resolution recites in substance that the defendant corporation at its inception and during subsequent years was and has been short of working capital and that funds for capital investment and operations were advanced by W. R. Long, trading as Long Supply Company, and subsequently Long Supply Company, Inc., and that on October 31, 1950, these advances to the defendant corporation amounted to $100,338.06. The resolution further recites that the remaining unissued authorized capital stock of the defendant corporation should be issued and sold for the purpose of paying off this indebtedness due Long Supply Company, Inc. And, thereupon, the resolution directs that the remaining 990 shares of unissued capital stock be issued and sold at not less than $100 per share, and that the indebtedness due the Long Supply Company, Inc., be paid out of the proceeds. The resolution further directs that each stockholder of the defendant corporation shall be entitled to subscribe for 99 shares of the new stock for each share owned as of January 8, 1951, and that each stockholder be allowed to subscribe and pay for the new stock at $100 per share. The resolution contains a forfeiture provision providing in effect that a failure on the part of any stockholder, his heirs or *358 assigns, to exercise this pre-emptive right on or before 10 o'clock a. m., February 10, 1951, shall work a forfeiture or waiver of the right to subscribe for such additional stock, with the directors being authorized to make sale of such remaining stock.
6. That after the adoption of the aforesaid resolutions at the January 8, 1951, meeting of the stockholders of the corporation, the plaintiff, by written communications delivered by special delivery, U. S. Mail, on or about February 26, 1951, to W. R. Long, President of the defendant corporation, and to all of the other directors of the corporation, demanded that a meeting of the stockholders be called immediately, as allowed by the By-laws, to consider rescission of the former action of the stockholders in undertaking to set aside as working capital the entire earned surplus of the corporation, and further to consider the declaration of dividends in accordance with a proposed, or alternate, resolution to be submitted to the meeting by the plaintiff, copies of which proposed, and alternate, resolutions were transmitted to each director with the written demand for call of a stockholders meeting. The proposed resolutions are incorporated in the complaint. They contain the following recitals:
"Whereas, it is desirable that the corporation's debt to Long Manufacturing Company of $100,338.06 as of October 31, 1950, be paid;
"And Whereas the payment thereof out of earned surplus will leave a surplus of $195,049.41 as of the same date;
"And Whereas the payment of cash dividends in the sum of $25,000 would leave remaining a working capital of $122,600 (cash, receivables and inventories of $233,400 against current liabilities of $110,800, a ratio of more than 2 to 1);
"And Whereas such working capital is sufficient for the needs of the business;
"And Whereas the resolution adopted January 8, 1951, directing the issuance of $99,000 in new stock for cash was improvident, and its execution would result in overcapitalizing the business, and leaving large funds idle a good part of each year, and would further result in the destruction of a major part of the interest in the corporation of any stockholder not exercising his pre-emptive right to subscribe to the new stock;"
The proposed resolution then resolves and directs:
"(1) That so much of the resolution of January 8, 1951, as sets aside $295,327.47 as working capital be rescinded.
"(2) That the officers and directors are directed to pay a dividend of two thousand four hundred ninety-four per cent (2,494%) on the outstanding stock, from earned surplus, to stockholders of record January 8, 1951, amounting to $24,940.00, in addition to the $60 in dividends declared January 8, 1951.
"(3) That the debt of Long Supply Company be paid out of the $146,000 cash on hand October 31, 1950.
"(4) That $122,600 be set aside as working capital.
"(5) That the resolution of January 8, 1951, directing the issuance of new stock, 990 shares for $99,000 cash, be, and the same is hereby rescinded."
The alternate resolution proposed by the plaintiff for consideration on failure of the adoption of the foregoing proposed resolution, provides:
"(1) That the resolution of January 8, 1951, directing the issuance of 990 shares of new stock for $99,000 cash be rescinded.
"(2) That the directors proceed to increase the authorized capital stock to 4,000 shares of $100 par value each.
"(3) That a stock dividend of $295,000 be then declared, out of earned surplus, making the capital $296,000 consisting of 2960 shares.
"(4) That if additional working capital then be found necessary, the directors be authorized to issue and sell 1,000 new shares for $100 cash each, to the stockholders of record according to their preemptive rights, or on their waiver, to other persons."
7. That the officers and directors of the corporation have failed to consider the *359 foregoing resolutions and proposals of the plaintiff, and "they have failed to call a meeting for the purpose of considering the resolutions and plaintiff has exhausted his remedies within the corporation and is without adequate remedy, save only a Court of Equity."
8. That the "defendants have failed and refused to declare dividends from the * * * profits of the corporation save only the * * * dividend totaling $60.00 as purportedly declared at the meeting of said corporation on January 8, 1951; that the resolutions of January 8, 1951, attempting to set aside the entire surplus as working capital was not adopted in good faith, but arbitrarily and fraudulently for the single purpose of defeating plaintiff's statutory right to dividends; that the payment of a dividend as demanded would not impair either the capital stock of the corporation, paid in and outstanding, or any working capital legally fixed pursuant to the provisions of the laws of North Carolina."
9. That "the defendants have resolved to and are threatening to issue additional capital common stock in the corporation in the amount of $99,000; that if said stock is issued plaintiff is unable financially to purchase the portion of said stock which, in accordance with said resolution, would be tendered to plaintiff, and in the event that said additional stock is issued by defendants before the declaration of a dividend or some proper distribution of the enormous profits of defendant corporation, either in cash dividend, stock dividend, or otherwise, the plaintiff will be irreparably damaged in that, after the issuance of such additional stock, plaintiff would be entitled to share in said profits only to the extent of 2/10 of 1%, whereas plaintiff is rightfully entitled to share in said profits and ownership of said business to the extent of 20%."
10. That "the action of the defendants in ignoring the requests of the plaintiff for some proper distribution of the profits of the defendant corporation and the threatened action of the defendants in undertaking to issue additional stock for the purpose of rendering valueless the right of the plaintiff to participate in any distribution of the profits of the defendant corporation are arbitrary, unlawful, and in violation of legal duties owed by the defendants to the plaintiff; that the stock of the plaintiff represents 20% of the net worth of said defendant corporation, and regardless of the enormous profits made by the defendant corporation, * * * the defendants have arbitrarily and unlawfully failed, neglected, and refused to pay out the accumulated profits of said corporation, and * * * that said defendants are willfully and deliberately failing to pay dividends, and are operating said business for their own gain and advantage and for the purpose of rendering the stock of the plaintiff valueless and to the great loss and damage of the plaintiff, and with the deliberate intent of `freezing out' plaintiff from his ownership in said corporation."
Upon the allegations of the complaint, the plaintiff prays judgment, among other things, "that the defendants be commanded and directed to declare and pay out among the stockholders of Long Manufacturing Company, Inc., the whole of the accumulated profits of said corporation, or such part thereof as the court shall find should be so declared, either in cash or by way of a stock dividend as provided by the resolutions proposed by the plaintiff * * *, and in accordance with the provisions of G.S. § 55-115 and other pertinent laws of North Carolina."
Here, then, the defendants by demurrer test the legal sufficiency of the foregoing allegations to state a cause of action. They set up and rely upon the provisions of G.S. § 55-115, which read as follows: "The directors of every corporation created under this chapter shall, in January of each year, unless some specific time for that purpose is fixed in its charter, or bylaws, and in that case at the time so fixed, after reserving, over and above its capital stock paid in, as a working capital for the corporation, whatever sum has been fixed by the stockholders, declare a dividend among its stockholders of the whole of its accumulated *360 profits exceeding the amount reserved, and pay it to the stockholders on demand. The corporation may, in its certificate of incorporation or bylaws, give the directors power to fix the amount to be reserved as a working capital."
The defendants contend it affirmatively appears from the complaint that in accordance with this statute the entire surplus of $295,327.47, after the payment of a 6% dividend, was duly and properly reserved and set aside as working capital, and that therefore there remains no surplus out of which dividends may be legally declared, and, this being so, that the complaint fails to state facts sufficient to constitute a cause of action.
But there is more to it than that. Conceding, as we may, that under the general law, including the foregoing statute, the controlling authorities of a corporation necessarily are clothed with broad discretionary powers in fixing the amount to be reserved and set aside as working capital from accumulated corporate profits, and conceding further that in the exercise of this discretion, corporate management, acting in good faith and with due regard for the affairs of the corporation as a whole and the welfare of its stockholders, may treat and deal with accumulated profits or earned surplus in a wide variety of ways: it may withhold the profits from the payment of dividends in whole or in part, so as to provide for the retirement of debts, or to build up additional capital, either on a temporary basis or by transfer to the permanent capital account by means of a stock dividend, or it may invest the surplus earnings in betterments and corporate expansion. However, this discretion is not an unlimited one. It must not be abused. The controlling management must act in good faith and not in arbitrary disregard of the rights of the minority stockholders. The controlling corporate authorities will not be permitted to use their powers arbitrarily or oppressively by refusing to declare a dividend where net profits and the character of the business clearly warrant it. Accordingly, if it be made to appear that the controlling management is acting in bad faith, for their own gain and advantage, in oppressive disregard of the rights of minority stockholders, in a manner amounting in effect to a breach of trust, even though no actual fraud be shown, a court of equity may be invoked to break the shackles of any such oppressive control. See Amick v. Coble, 222 N.C. 484, 23 S.E.2d 854; Mitchell v. Aulander Realty Co., 169 N.C. 516, 86 S.E. 358; White v. Kincaid, 149 N.C. 415, 63 S.E. 109, 23 L.R. A.,N.S., 1177; 13 Am.Jur., Corporations, Sections 422, 423 and 708; Annotations: 55 A.L.R. 8, p. 44 et seq.; 76 A.L.R. 885; 109 A.L.R. 1381; Gaines v. Long Manufacturing Co., N.C., 67 S.E.2d 350; Anderson v. W. J. Dyer & Bro., 94 Minn. 30, 101 N.W. 1061; Star Publishing Co. v. Ball, 192 Ind. 158, 134 N.E. 285; Mulcahy v. Hibernia Savings & Loan Soc., 144 Cal. 219, 77 P. 910; Wilson v. American Ice Co., D.C., 206 F. 736.
In Anderson v. W. J. Dyer & Bro., supra, the action was instituted by a minority stockholder against the majority stockholders, alleging a course of conduct, including the withholding of dividends, amounting in effect to a conspiracy to deprive the plaintiff of his stock. The defendants demurred to the complaint for failure to state a cause of action. The demurrer was overruled. This was affirmed on appeal, with the Minnesota Court making these observations: "While it is true that the courts cannot ordinarily compel a corporation to declare a dividend at the suit of a minority stockholder, yet it is not to be doubted that where dividends are withheld for an unlawful purposeto deprive a particular stockholder of his rights he may have the aid of equity for adequate protection. It appears in this complaint that the earnings and surplus of the company amounted to more than $70,000, upon an authorized capital of $50,000; that a portion of the capital stock has not been issued, and that the failure and refusal to declare a dividend is for the purpose of defrauding plaintiff; * * *. Under such circumstances, it is too plain to admit of doubt, as held by the trial court, that these facts entitled plaintiff to some relief." *361 94 Minn. at page 35, 101 N.W. at page 1062.
In 13 Am.Jur., Corporations, Sec. 423, p. 475, it is stated: "The devolution of unlimited power imposes on the holders of the majority of the stock a correlative duty, the duty of a fiduciary or agent, to the holders of the minority of the stock, who can act only through themthe duty to exercise good faith, care, and diligence to make the property of the corporation produce the largest possible amount, to protect the interests of the holders of the minority of the stock, and to secure and pay over to them their just proportion of the income and of the proceeds of the corporate property."
It is further stated in 13 Am.Jur., Corporations, Sec. 708, as follows:
"It is well settled that in a proper case a court of equity has jurisdiction to compel the declaration and payment of corporate dividends wrongfully withheld from minority stockholders. * * *
"While a strong case must be made to justify such relief and while the court will not generally infringe upon the discretion vested in the corporation and its officers, where the right to a corporate dividend is clear, a court of equity will interfere to compel the directors to declare it. * * * Some courts have declared that fraud or bad faith is necessary in order to warrant such relief, but according to the weight of authority courts of equity may also compel the declaration of dividends in extreme cases of arbitrary, oppressive, or wrongful conduct amounting in effect to a breach of trust, even though no actual fraud is shown."
In the instant case the gravamen of the plaintiff's complaint is that: "the resolutions of January 8, 1951, attempting to set aside the entire surplus as working capital of $295,327.47 * * * was not adopted in good faith, but arbitrarily and fraudulently for the single purpose of defeating plaintiff's statutory right to dividends, * * * and that the defendants have arbitrarily and unlawfully failed, * * * and refused to pay out the accumulated profits * * * and are willfully and deliberately failing to pay dividends, and are operating said business for their own gain and advantage * * * for the purpose of rendering the stock of the plaintiff valueless * * * and with the deliberate intent of `freezing out' plaintiff from his ownership in said corporation."
These allegations put to test the validity of the resolution of January 8, 1951. If the allegations be true, no valid corporate action has been taken, and the earned surplus of the corporation does not stand set aside as working capital. These allegations would seem to be sufficient to afford the plaintiff an opportunity to be heard,a chance to produce his proofs and see if he can make good his charges. Amick v. Coble, supra, 222 N.C. 484, 23 S.E.2d 854.
As a general rule, a stockholder may not maintain suit against the corporation to redress a corporate wrong unless and until he has exhausted reasonable effors in seeking relief within the corporation; and, ordinarily, he is required to allege in his complaint that he has sought, but has been unable to obtain, correction of the wrongs complained of by the controlling authorities of the corporation, or show facts excusing such demand. See Winstead v. Hearne Bros. & Co., 173 N.C. 606, bot. page 611, 92 S.E. 613; 13 Am.Jur., Corporations, Sec. 454, p. 500. Here, it would seem that the plaintiff has alleged in detail sufficient efforts to obtain relief, before suit, from within the corporate management.
We have not overlooked the decision in Steele v. Locke Cotton Mills Co., 231 N.C. 636, 58 S.E.2d 620, cited and relied upon by the defendants. That case, however, is distinguishable. There it was not made to appear that at the time of the commencement of the action funds were available for the payment of dividends, as is specifically alleged in the instant case.
For the reasons given, the judgment below overruling the demurrer is affirmed.
VALENTINE, J., took no part in the consideration or decision of this case.